## 9037

### JORDAN v. SOUTHERN RAILWAY CO.

(84 S. E. 871.)

APPEAL AND ERROR. ASSIGNMENTS OF ERROR. CARRIER AND PASSENGER.
FARES. TICKETS. EJECTMENT OF PASSENGER. ISSUES.

1. APPEAL AND ERROR—ASSIGNMENTS OF ERROR.—The practice of making
in opening argument, a direct and succinct statement of legal ques-
tions raised on appeal, instead of quoting, or referring to, prolix
exceptions, commended.

2. CARRIERS—CARRIERS OF PASSENGERS—TICKET.—Where a carrier had
three routes between two points in different States, and the fare, as
filed with the Interstate Commerce Commission, over the longer route
was more than that over the other two, a passenger who paid the
fare for the longer route is not bound by his signing of a ticket
calling for the transportation over a shorter route, since that con-
tract would be illegal.

3. CARRIERS—EJECTION OF PASSENGER—PUNITIVE DAMAGES—LAW GOV-
ERNING.—In a suit for punitive damages for wilful ejection of a
passenger, where the amended complaint alleged that the carrier's
agent within the State fraudulently issued to plaintiff a wrong ticket,
and there was evidence to support that allegation, the Court could
not direct a verdict for defendant on the ground that, under the law
of the State where the ejection occurred, punitive damages could
not be recovered under the facts.

4. TRIAL WITNESSES.—Where the defendant in a civil action fails to
produce testimony within his reach to contradict testimony intro-
duced by plaintiff, the former cannot complain if the jury takes the
view that defendant could not deny the charge.

5. CARRIERS—EJECTION OF PASSENGER—REQUESTED INSTRUCTIONS—MOD-
IFICATION.—Where a passenger paid for an interstate ticket over a

longer route, but the agent gave him one over a shorter route, which he took and signed, though the fare over that route was less than that over the other, it was proper for the Court, in an action by the passenger for his ejection, to modify an instruction, requested by carrier, that the passenger was bound by the contract that he signed by adding "if he got the contract called for and paid for," since he could not make a legal contract for transportation over the shorter route at the fare charged over the longer route.

Before DeVore, J., Winnsboro, Spring term, 1914. Affirmed.

Action by W. Glover Jordan against Southern Railway Company. From judgment for plaintiff, defendant appeals. The facts are stated in the opinion. The exceptions were as follows:

1. Excepts because the presiding Judge erred in not directing a verdict for the defendant at the close of all of the testimony; the error consisting in this: It having appeared that the cause of action set out in the complaint arose in the State of North Carolina, and that the liability of the defendant company, if any, must be governed by the law of said State, and it further appearing that the cause of action set out in the complaint was exclusively for punitive damages, and it appearing in the testimony that the law of the State of North Carolina is that "if the expulsion was attended with undue force or other aggravating circumstances calculated to humiliate the passenger or wound his pride, or if the passenger be lawfully ejected but undue force used, accompanied by fraud or an exhibition of malice, rudeness, recklessness or other wilful wrong, such exemplary damages may be allowed as the jury think are warranted by the facts," and also section 2629 of the Revisal of the Laws of North Carolina, 1905; that there was no evidence whatever in the case under the law of North Carolina

FOOTNOTE.—As to right of carrier to eject passenger holding ticket invalid through its own fault, see notes in 24 A. & E. Ann. Cas. 1912c, 730 to 734, and 9 A. & E. Ann. Cas. 889.

which would permit the case to go to the jury upon the question of punitive damages, it being shown that he was not ejected by undue' force or any aggravating circumstances calculated to humiliate the plaintiff or wound his pride, nor was such act accompanied by fraud or an exhibition of malice, rudeness, recklessness or other wilful wrong; further, not having, therefore, proved any punitive damages, and no actual damages having been alleged, the plaintiff had failed in his entire case; further, that under the conditions of the ticket which was read in evidence, to wit, the 8th, 9th and 10th clauses of the same, and which constitute the contract between the carrier and the plaintiff, and under the law of North Carolina, the agents and servants of the defendant had a right to put the plaintiff off the train, and if there were no circumstances of unnecessary rudeness, insulting language or things of that kind, no punitive damages could be recovered. For a further ground upon which the presiding Judge should have directed a verdict for the defendant, said defendant in its answer set up and claimed by its second defense that the plaintiff was making an interstate journey, to wit, between Winnsboro, S. C., and Black Mountain, N. C., and return between said points; that the defendant, in accordance with the act to regulate commerce and the acts amendatory thereof, had filed with the Interstate Commerce Commission and had approved by the same, its schedule and tariffs of rates, fares and charges over its various lines doing interstate business, and that such schedules and tariffs of rates, fares and charges, regulations and rules, had become the law governing the sale of passenger transportation over its lines between interstate points; that in and by such schedules and tariffs of rates, fares and charges, rules and regulations, it was unlawful for any interstate carrier, directly or indirectly, to make any special rate, rebate, drawback or other device, charge, demand, collect or receive from any person or persons a greater or less compensation for any services rendered in the transporta-

tion of passengers or property subject to the provisions of said act, than it charges, demands, collects or receives from any other person or persons for doing them a like and contemporaneous service; that in pursuance of such schedules and tariffs of fares, rates and charges, filed with and approved by the Interstate Commerce Commission, this defendant had, at its station at Winnsboro, sold to the plaintiff a going and returning ticket from Winnsboro, S. C., to Black Mountain, N. C., which said ticket distinctly stated on its face "Good via short line only," which said short line was well known to be and was shown in the testimony to be via Rock Hill and Marion, N. C., instead of via Salisbury, N. C., as claimed by the plaintiff, and this defendant, by the sale of such ticket, entered into the contract expressed upon said ticket, and by the tariffs and schedules of said company filed with, and approved by, the Interstate Commerce Commission, and which was introduced in evidence, and that, such ticket so constituting the contract between them, none other could be proven or shown, or in any way varied or modified, nor could any officer, agent or employee of the company waive, or agree to waive or modify, in any way the terms of said contract, but that such contract became absolutely binding and obligatory both upon the plaintiff and the defendant company; that the trial Court was bound to take judicial notice of the interstate commerce law and of its construciton by the Supreme Court of the United States, and taking notice of the issues raised by the pleadings it should have on this ground directed a verdict for the defendant, because its conductors had a right to eject the plaintiff and to enforce the terms of said ticket, and the rules and regulations approved by and on file with the Interstate Commerce Commission, and it was the duty of the plaintiff to have left the train without being in any way compelled to do so.

2. Excepts, because the presiding Judge erred in modifying the defendant's third request to charge, which was as fol-

lows: "Where a common carrier is entitled, under the law, to sell reduced rate or excursion tickets, the carrier has the right to prescribe any reasonable conditions or limitations upon such reduced rate or excursion tickets, and it is the duty of the passenger to take notice of such conditions and limitations," the error being (a) that such request to charge was a sound proposition of law, and should have been charged, as requested; (b) that the modification made by the presiding Judge nullified the request to charge, and exempted the passenger from taking any notice of conditions and limitations on excursion tickets.

3. Excepts, because the presiding Judge erred in modifying defendant's fourth request to charge, which was as follows: "Where a common carrier sells reduced fare or excursion tickets, it has the right, as already stated, to prescribe reasonable conditions and limitations therein such as that the ticket must be used within a limited time, or used upon a particular train, or by a particular route, unless the passenger purchased a ticket by a different route, and it is the duty of the passenger holding such reduced rate or excursion ticket to take notice of such reasonable conditions and limitations, as well as the route called for by his ticket," the error being (a) that such charge contained a sound proposition of law applicable to the facts in the case, and should have been charged without modification; (b) that such change nullified the whole request to charge, and exempted the passenger from taking any notice of conditions and limitations on excursion tickets in cases where mistake or error might occur.

4. Excepts, because the presiding Judge erred in modifying defendant's fourteenth request to charge, which was as follows: "I charge you further, as a matter of law, that it will be conclusively presumed that a person of ordinary intelligence who signs a railroad excursion ticket knew and assented to all of its conditions, although the fact be that it was not read before or after signing, or its conditions not

called to his attention; and the plaintiff, having signed the ticket offered in evidence in this case, is conclusively presumed to have known and assented to all of its conditions, whether he read the ticket before signing it or not, and even if such conditions were not called to his attention," the error being (a) that such request to charge contained a sound proposition of law applicable to the facts in the case, and should have been charged without modification; (b) that such charge was contrary to the decisions of the Supreme Court of South Carolina, inasmuch as the undisputed evidence was that plaintiff had signed the ticket in question, and had retained the returning coupon in his possession from the time of the purchase thereof, on the 21st day of August, 1913, until the 1st day of September, 1913, which was ample time for him to have discovered any error or omission appearing upon the face of said ticket before offering the same for his return passage.

*Messrs. McDonald & McDonald,* for appellant, submit: *Regulations as to form of ticket govern:* 233 U. S. 97; 158 U. S. 98; 202 U. S. 242; 209 U. S. 81; 219 U. S. 476; 204 U. S. 445; 227 U. S. 656; 232 U. S. 490; 233 U. S. 173; *223 U. S. 573-591; 226 U. S. 491; 227 U. S. 657. No agent can waive, modify or alter the terms of such contracts:* 95 S. C. 427; 98 S. C. 95 and 100. *Punitive damages not recoverable under law of North Carolina:* 106 N. C. 168; 11 S. E. 526; 45 S. E. 345 and 349; 47 S. E. 765; 52 S. E. 263; *Ib.* 731; 66 S. E. 342; 67 S. E. 60; 72 S. E. 391. *Passenger bound by stipulations in ticket signed by him:* 26 S. C. 91; 39 S. C. 63; 62 S. C. 7; 63 S. C. 299; 65 S. C. 30; 77 S. C. 366; 65 S. C. 103; 83 S. C. 44; 88 S. C. 424. *Modification of requests improper:* 62 S. C. 12.

*Mr. Glenn W. Ragsdale,* for respondent, submits: *Ticket agent's knowledge as to rights of passengers imputed to*

*conductors:* 86 S. C. 522; 71 S. C. 444. *Common law
rights of passenger:* 90 S. C. 475. *North Carolina cases
as to punitive damages:* 66 S. E. 343; 67 S. E. 60; 52 S. E.
731; 35 S. E. 349; 47 S. E. 765; 52 S. E. 263; 72 S. E. 491,
495. *Modification of requests:* 26 S. C. 91; 70 S. C. 115;
71 S. C. 150.

March 27, 1915.

The opinion of the Court was delivered by MR. JUSTICE
FRASER.

The respondent lives in Winnsboro, S. C., and desired to
go to Black Mountain, N. C., for a vacation. The appel-
lant railroad company has three routes between Winnsboro
and Black Mountain. For the purpose of convenience we
will call them the Salisbury route, the Statesville route and
the Marion route. The Salisbury route was the longest
and the Marion route the shortest in miles. The fare (round
trip) by the Salisbury route was seven dollars and seventy-
five cents. Although there was considerable difference in
the distances by the Statesville and Marion routes the fare
was the same, to wit, six dollars and seventy-five cents; while
the fare was a dollar more by the Salisbury route the con-
nection was better and it was cheaper and quicker to the
passenger in the long run. The respondent claims that he
went to the agent of the appellant at Winnsboro and asked
for a ticket to Black Mountain by the Salisbury route and
paid him the seven dollars and seventy-five cents required.
The respondent was given a summer excursion round trip
ticket upon which was marked "via short line only." This
ticket the respondent signed. Respondent's baggage was
checked via Salisbury. On the way to Black Mountain the
respondent went by Salisbury and his ticket was accepted
without question. On the return trip the plaintiff was
directed by the conductor to get off at Marion, and before
he had reached Statesville even, and take the short trip or
to pay one dollar and thirty cents additional fare. This the

respondent refused to do, stating that he had paid for transportation by the Salisbury route; that he had come that way and would return that way. The conductor refused to honor the ticket by that route and ejected him. The respondent then brought suit for punitive damages for the wilful and malicious conduct of the appellant in ejecting him. The respondent amended his complaint to allege that the agent of the defendant wilfully, fraudulently and knowingly delivered to the plaintiff the wrong ticket. Upon the trial of the cause the jury found a verdict for the plaintiff and from the judgment entered thereon the defendant appealed. The defendant moved for a nonsuit and for a direction of verdict upon the whole case; both motions were overruled.

There are several exceptions, but the appellant makes an independent statement of the questions. This practice the Court commends. It is by far the most satisfactory way.

"There was error in not directing a verdict generally for the defendant upon the ground that, under the interstate commerce act the ticket was the exclusive contract between the plaintiff and the defendant and the plaintiff was legally and properly ejected from the train for failure to conform and comply with the conditions and limitations of such contract of carriage"—*i. e.*, the payment of the extra fare.

The ejectment occurred in North Carolina and the statutes of that State allowed the ejectment of a passenger for nonpayment of fare. The rate in this case was fixed by the Interstate Commerce Commission and fixed for the Salisbury route at $7.75. There was testimony, and it was uncontradicted, that the passenger had paid $7.75. He paid every cent that the law required. To grant this motion, his Honor would have had to find in the face of the uncontradicted testimony that the plaintiff had not paid the full fare. It is said, however, that the plaintiff had signed a

contract that required him to go by the Marion route. The plaintiff is bound by any lawful contract he may make. The parties could not make a contract that was in violation of the rates fixed by the Interstate Commerce Commission that would bind either party. It is just as unlawful to charge too little as to charge too much. The railroad company could no more have made a contract by the short route at $7.75 than it could have made a contract by long route at $6.75. Good rules work both ways.

The principle upon which appellant's agents acted, to wit, when in doubt charge the higher rate, is not sound. If the plaintiff had paid $6.75 and had gone by Salisbury, in spite of any contract it may have signed, it not only had the right, but it was its duty, under heavy penalties, to collect the excess as, if it did not discover the mistake until after the transportation had ended, it had then the right to demand and bring suit, if necessary, to collect the deficit. If the plaintiff had paid $6.75, then he had the choice of two routes, to wit, Statesville or Marion, and he could bind himself to go by Statesville or by Marion, and when he signed the contract to take the short route he bound himself to take the Marion route. If, however, he paid the $7.75 there was only one route for that fare and it was unlawful under that fare to take any other. No other contract would have been allowed by law and an unlawful contract binds no one. This position cannot be sustained.

There was error in not directing a verdict in favor of the defendant upon the ground that, under the law of the State of North Carolina, and the undisputed facts of the case, the plaintiff could not recover punitive damages.

This was a motion to direct a verdict on the whole case. Two acts were complained of, to wit, a wilful and fraudulent sale of the ticket, as well as the wilful ejection. The direction of a verdict would have included both. The

amendment to the complaint put the blame on the ticket agent.

There is testimony to show that the plaintiff called for a ticket by Salisbury and paid for it. There is also testimony that plaintiff's baggage was checked that way. The jury might have inferred from that that the agent thoroughly understood the route and yet gave him the wrong ticket.

Was that negligence or wilfulness. Fraud was charged. The only one who could have explained the improper ticket, to wit, the ticket agent, was not put on the stand and no explanation was given. On the contrary, the regular ticket agent (for he who sold the ticket was a substitute) testified that the cash entry made by the substitute was only $6.75.

If the substitute received $7.75 and only accounted to the railroad company for $6.75, then fraudulent conduct might have been inferred. The defendant was not required to put him up, but when it did not it can't complain if the jury took the view that he could not deny the charge.

This is not a criminal proceeding, where the defendant is shielded. This proposition cannot be sustained.

"His Honor should have directed a verdict upon the ground that under the terms and conditions of his ticket, which was the contract between him and the carrier, he had no right to be carried by the longer route without payment of extra fare, and the defendant's agents, therefore, had the right under the law of the State of North Carolina to eject him."

The uncontradicted testimony is that the plaintiff had already paid the fare. This position cannot be sustained.

"His Honor erred in modifying the defendant's third, fourth and fourteenth requests to charge."

The defendant asked his Honor to charge that the plaintiff is bound by the contract that he signed, and his Honor added, "if he got the contract he called for and paid

for." The route was in question. We have seen that there was but one route for $7.75. There was but one route possible for that fare. His Honor had no right to tell the jury that when the Interstate Commerce Commission had fixed the fare on the short route at $6.75 the parties could make a binding contract for that route at $7.75. This proposition cannot be sustained.

The judgment is affirmed.